**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

RUEBEN OLIVARES-RODRIGUEZ,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

No. C 13-4004-MWB
(No. CR 09-4048-DEO)

**MEMORANDUM OPINION AND ORDER REGARDING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE**

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION................................................................. 2*
    *A.   Procedural Background ............................................... 2*
    *B.   Factual Background .................................................... 3*
    *C.   Issues Presented ......................................................... 7*
*II.  LEGAL ANALYSIS ............................................................. 7*
    *A.   Standards For § 2255 Relief......................................... 7*
    *B.   Relief For Ineffective Assistance of Counsel ............... 10*
        *1.   Applicable Standards ......................................... 10*
        *2.   Discussion ......................................................... 12*
            *a.   Procedural Default ................................... 12*
            *b.   Deficient performance .............................. 13*
            *c.   Cure ......................................................... 15*
            *d.   Prejudice................................................... 17*
*III. CERTIFICATE OF APPEALABILITY............................... 19*
*IV. CONCLUSION.................................................................. 20*

Before me is Ruben Olivares-Rodriguez's, 28 U.S.C § 2255 Petition (Civ. docket no. 1). Judge O'Brien held an evidentiary hearing in this case on May 28, 2014, and the case was reassigned to me on August 20, 2015.

## I. INTRODUCTION
### A. *Procedural Background*

Olivares was indicted by the grand jury of the United States District Court for the Northern District of Iowa for possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Crim. docket no. 2). Olivares filed a motion to suppress, which Judge O'Brien denied, on June 3, 2010 (Crim. docket no. 77). Olivares subsequently entered a guilty plea on July 2, 2010 (Crim. docket no. 84). On October 5, 2010, Judge O'Brien sentenced Olivares to 36 months imprisonment and three years of supervised release (Crim. docket no. 96).

Olivares appealed and the Eighth Circuit Court of Appeals affirmed the judgment of the district court on April 7, 2011. *United States v. Olivares-Rodriguez*, 415 F. App'x 734, 735 (8th Cir. 2011).[1] His petition for rehearing *en banc* and rehearing by the panel was denied on June 2, 2011. Mandate issued on June 10, 2011, and no petition for writ of certiorari was filed.

Olivares filed a Petition for Writ of Error Coram Nobis on July 12, 2012. (Civ. docket no. 116).[2] In that petition, he stated that he was detained at the South Texas Detention Center, Pearsall, Frio County, Texas, by the Department of Homeland Security, Immigration and Customs Enforcement, Detention and Removal Division. (He was released from Bureau of Prisons custody on April 25, 2012, and remained on

---

[1] Olivares's sole argument on appeal was that his motion to suppress should have been granted.

[2] Olivares retained private counsel to file his Writ, Juan Gonzalez. Attorney Gonzalez represented Olivares throughout his § 2255 case.

supervised release until April 25, 2015.) In his Writ, Olivares asked to have his conviction vacated. He alleged that he received ineffective assistance of counsel because appointed counsel did not advise him of the consequences of a guilty plea to his immigration status as required by *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). Judge Strand recommended that Olivares's Writ be considered a petition under 28 U.S.C. § 2255, and Judge O'Brien adopted that recommendation (Civ. docket no. 2). On February 28, 2013, Olivares filed a supplemental petition (Civ. docket no. 3). Olivares then failed to comply with various procedural rules and ultimately waived his right to file a merits brief (Civ. docket nos. 6-8).

On May 28, 2014, Judge O'Brien held a hearing on Olivares's petition. Judge O'Brien gave Olivares (another) opportunity to file a brief after the hearing, but Olivares declined. The respondent filed both a pre-hearing and post hearing brief. Prior to Judge O'Brien issuing a ruling, this case was reassigned to me. I have reviewed the parties' filings, along with the transcript of the evidentiary hearing.

### B. *Factual Background*

It is undisputed that Olivares was a longtime resident of the United States. He was not a citizen, but had been a legal permanent resident for more than twenty years. However, any non-citizen convicted of trafficking drugs is subject to deportation.[3]

---

[3] As the Supreme Court has stated:

> The [Immigration and Nationality Act (INA)] allows the Government to deport various classes of noncitizens, such as those who overstay their visas, and those who are convicted of certain crimes while in the United States, including drug offenses. § 1227. Ordinarily, when a noncitizen is found to be deportable on one of these grounds, he may ask the Attorney General for certain forms of discretionary relief

3

The Grand Jury indicted Olivares on September 17, 2009, on one charge related to the distribution of powder cocaine. His counsel filed a motion to suppress, which played out before Magistrate Judge Zoss and Judge O'Brien for the better part of a year. On June 3, 2010, Judge O'Brien accepted Magistrate Judge Zoss's report and recommendation denying the motion to suppress. Shortly thereafter, the parties notified Judge O'Brien that Olivares intended to plead guilty. Judge O'Brien held a hearing on July 2, 2010. At that hearing, Olivares told Judge O'Brien of his intention to plead guilty. Judge O'Brien asked Olivares, "Do you understand that if you plead guilty here, the Court accepts your plea, the chances may be that you're going to be deported? Do you understand that?" (Civ. docket no. 102, p. 9.). Olivares responded, "Yes." *Id*. Judge O'Brien ultimately accepted Olivares's guilty plea.[4]

---

> from removal, like asylum (if he has a well-founded fear of persecution in his home country) and cancellation of removal (if, among other things, he has been lawfully present in the United States for a number of years). §§ 1158, 1229b. But if a noncitizen has been convicted of one of a narrower set of crimes classified as "aggravated felonies," then he is not only deportable, § 1227(a)(2)(A)(iii), but also ineligible for these discretionary forms of relief. *See* §§ 1158(b)(2)(A)(ii), (B)(i); §§ 1229b(a)(3), (b)(1)(C). The INA defines "aggravated felony" to include a host of offenses. § 1101(a)(43). Among them is "illicit trafficking in a controlled substance." § 1101(a)(43)(B). This general term is not defined, but the INA states that it "includ[es] a drug trafficking crime (as defined in section 924(c) of title 18)." *Ibid*. In turn, 18 U.S.C. § 924(c)(2) defines "drug trafficking crime" to mean "any felony punishable under the Controlled Substances Act."

*Moncrieffe v. Holder*, 133 S. Ct. 1678, 1682-83, 185 L. Ed. 2d 727 (2013).

[4] The record indicates that Olivares is a native Spanish speaker, who has some proficiency in English. However, an interpreter was provided to Olivares for all court hearings.

On October 5, 2010, Judge O'Brien held a sentencing hearing. Olivares's attorney, Michael Smart, argued in favor of a downward variance. Smart based the variance motion, in part, on the fact that, "deportation is going to be the inevitable consequence of this conviction. At the end of any prison term, he's going to be deported, which is going to have catastrophic consequences for this defendant." (Civ. docket no. 104, p. 13). In granting the variance motion, Judge O'Brien stated, "[t]he defendant argues that he faces a severe consequence of a lifetime of banishment from the only country he has known for the last 26 years. The court is not in any way implying that he shouldn't be deported, but it does recognize that he is going to be put in another country that he has no real connections with and it will be quite a jolt." (Civ. docket no. 104, p. 33). Judge O'Brien then sentenced Olivares to 36 months incarceration. Smart and Judge O'Brien discussed Olivares's BOP placement, and Judge O'Brien noted that, since Olivares would most likely be deported, "he is going to be down in South Texas or someplace." (Civ. docket no. 104, p. 37). Judge O'Brien concluded by stating that Olivares would have three years of supervised release but, "it's likely you're going to be deported." *Id*. at 38.

Subsequent to his conviction and while serving his sentence, Olivares was deported and filed the present petition. As part of the respondent's resistance, ***the respondent*** filed an affidavit authored by attorney Smart, who stated he advised Olivares of the deportation implications of pleading guilty. As set out in the affidavit:

> I specifically discussed the issue of deportation with him on March 10, 2010. My notes reflect that the defendant was very upset [about] this as all of his immediate family, his ex-wife and children, and his pregnant girlfriend all resided in the United States. He was very upset by the fact that upon conviction, he would be deported to Mexico and would not be allowed to return to the United States to be with his family.

(Civ. docket no. 9-1). Smart also said that he told Olivares, "Under current law, he would not be allowed to return to the United States by virtue of his conviction. I also

5

specifically recollect discussing the same with his sister, Maria Losa, whom he often lived with." *Id*. The affidavit goes on to note the variance motion, discussed above, and the reasons Smart felt that pleading guilty was Olivares's best option.

Judge O'Brien held an evidentiary hearing on Olivares's petition. Smart testified in conformity with his affidavit. Smart stated that, prior to the guilty plea, he advised Olivares that Olivares would be deported and that Olivares was extremely upset by the news. Smart also stated that he made Olivares's pending deportation a topic of the variance motion, a decision he discussed with Olivares. Olivares's § 2255 attorney questioned Smart extensively about whether Smart talked to Olivares in Spanish or English. Smart stated that he knows some Spanish, and may have discussed menial details with Olivares in Spanish, but would have used his office's Spanish interpreter when discussing the legal details of the case. Smart also testified about why he felt Olivares needed to plead guilty. He stated that the basis for the charge against Olivares was that his vehicle was stopped and, after a drug dog search, Olivares was found to be carrying four ounces of cocaine. Smart testified that there was a video of the stop and the search and that after he was arrested, Olivares provided a post-Miranda statement where he told police he had carried cocaine between Omaha and Sioux City several times. Smart also testified that, during the pendency of Olivares's case, the AUSA told Smart that a confidential informant had purchased drugs from Olivares on at least two occasions. The AUSA told Smart that if Olivares proceeded to trial, they would file a superseding indictment increasing the charges against Olivares. Smart testified that, based on those facts, Olivares could not avoid a conviction and deportation and pleading guilty was his best option for sentencing purposes.

Olivares also testified at the hearing. Olivares said he mainly talked to Smart directly, without an interpreter. (Although Olivares said that sometimes an interpreter was present.) Olivares stated that sometimes Smart talked in English, sometimes in Spanish. (Olivares stated that he speaks English.) Olivares said that, prior to the plea,

Smart told him that there might be "immigration consequences" but did not tell him that he would be deported. Olivares also said that Smart told him that he could serve his prison time in Minnesota, he would be able to take a drug treatment program, and he would probably get out early so he could be with his family. Olivares said that he did not realize that he was going to be deported until after he was sentenced, when, instead of being sent to Minnesota, he went to a BOP facility in Texas.

### C. *Issues Presented*

In his petition, Olivares argues he received ineffective assistance of counsel in his criminal case because his attorney failed to inform him that he would be deported if he plead guilty. The respondent makes several arguments in response. First, the respondent argues that Olivares's claim is procedurally barred because Olivares did not raise it on direct appeal. Second, the respondent argues that Olivares cannot show deficient performance because his trial counsel, Michael Smart, did, as a matter of fact, advise Olivares that he would be deported if he plead guilty. Third, the respondent argues that, even if Mr. Smart failed to tell Olivares about the collateral consequences of the plea deal, Judge O'Brien cured the deficient performance when he told Olivares that he would be deported. Finally, the respondent argues that Olivares cannot show prejudice because the plea deal was his best option.

## II. LEGAL ANALYSIS
### A. *Standards For § 2255 Relief*

Section 2255 of Title 28 of the United States Code provides four general grounds for relief:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court

7

> was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post-conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to

8

relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the [*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)] test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536–37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id*. (quoting *McNeal v. United States*, 249 F.3d 747, 749–50 (8th Cir. 2001)).

### B. Relief For Ineffective Assistance of Counsel

#### 1. Applicable Standards

A criminal defendant is constitutionally entitled to the effective assistance of counsel not only at trial, but at sentencing, on direct appeal, and during other "critical" phases of the criminal proceedings. *Padilla*, 559 U.S. at 373 (negotiation of a plea bargain); *Burger v. Kemp*, 483 U.S. 776, 803–04 (1987) (pretrial plea negotiations); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (direct appeal); *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (sentencing). The Eighth Circuit Court of Appeals has recognized that if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' … and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010).

To succeed on an ineffective assistance of counsel claim:

> [a petitioner] "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S. Ct. 2052. [The Court] "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S. Ct. 2052.

*Weaver v. United States*, 793 F.3d 857, 860 (8th Cir. 2015). "Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" *Hyles v. United States*, 754 F.3d 530, 533 (8th Cir. 2014) (quoting *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013)).

Deficient performance is "performance that falls 'below an objective standard of reasonableness,'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)), that is, conduct that failed to conform to the degree

of skill, care, and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687; *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687)).

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained that a reasonable probability means "a probability sufficient to undermine confidence in the outcome. . . That requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (internal citations omitted). A showing of prejudice requires "counsel's errors to be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Richter*, 562 U.S. at 104 (internal citations omitted). As the Eighth Circuit Court of Appeals has explained, however, "prejudice may be presumed when the defendant experiences a complete denial of counsel at a critical stage of his trial. . . [T]he trial is the paradigmatic critical stage." *Sweeney v. United States*, 766 F.3d 857, 860 (8th Cir. 2014) (internal citations omitted).

In 2010, the Supreme Court decided *Padilla v. Kentucky*, holding that when advising a criminal defendant about the consequences of pleading guilty, "counsel must inform her client whether his plea carries a risk of deportation," and that failure to do so is subject to analysis under Strickland. 559 U.S. at 374. The Court also recognized that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *Id*. at 368. The Court reasoned that:

> changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes has never been more important. These changes confirm our view

11

> that, as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.

559 U.S. at 364 (footnote omitted).

Although the holding in *Padilla* makes counsel's failure to warn of a deportation risk deficient performance under *Strickland*, the Eighth Circuit Court of Appeals set a high bar for establishing the second *Strickland* prong, prejudice, in *Padilla*-type cases. In a case where the petitioner argued that counsel failed to advise him of a deportation risk, the Eighth Circuit Court of Appeals stated that the petitioner could not show prejudice if the presentence report stated that the petitioner may be deported:

> [The petitioner] cannot satisfy *Strickland's* prejudice prong. Regardless of whether *Padilla* is retroactive, a defendant cannot satisfy *Strickland's* prejudice prong when "the PSR indicated a likelihood that [the defendant] would be deported if convicted; [the defendant] confirmed that he had read the PSR, discussed it with his counsel, and understood it; and [the defendant] never moved to withdraw his guilty plea."

*Abraham v. United States*, 699 F.3d 1050, 1053 (8th Cir. 2012) (quoting *Correa-Gutierrez v. United States*, 455 F. App'x 722, 723 (8th Cir. 2012) (unpublished *per curiam*)). The Supreme Court later held that the *Padilla* decision does not apply retroactively to the benefit of petitioners placed in custody prior to the Court's decision. *Chaidez v. United States*, 133 S. Ct. 1103, 1111, 185 L. Ed. 2d 149 (2013) (applying *Teague v. Lane*, 489 U.S. 288 (1989)).

### 2. Discussion
#### a. Procedural Default

The respondent's first argument is that Olivares's petition is procedurally barred. During the hearing, the respondent argued that the petition was both time barred and procedurally defaulted because Olivares failed to exhaust this issue on direct appeal. In

its post-trial brief, the respondent abandoned its timeliness argument. (Civ. docket no. 12) Thus, the respondent's remaining argument is that Olivares failed to raise this issue on direct appeal.

As I stated above, as a general rule, a claim that could have been raised on direct appeal, but was not, is waived. However, Olivares argues he was provided "ineffective assistance of counsel." Ineffective assistance claims are not procedurally defaulted when brought for the first time pursuant to § 2255. *Massaro v. United States*, 538 U.S. 500, 508 (2003). The Eighth Circuit Court of Appeals has also expressly recognized that a claim of "ineffective assistance of counsel" should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, Olivares's claim of ineffective assistance of trial counsel is properly presented in a § 2255 proceeding.[5]

### b. *Deficient performance*

The well-known *Strickland* standard for ineffective assistance of counsel states that, before a petitioner can be granted relief, the petitioner must show both deficient performance and prejudice. In *Padilla*, the Supreme Court held that in a case such as this, where a defendant would be deported as a collateral consequence of a guilty plea, counsel has a duty to inform the defendant of the immigration consequences. The Supreme Court stated that a counsel who failed to inform their client of the possibility of deportation performed deficiently. Thus, if Smart did not tell Olivares that he would be deported, Smart performed deficiently.

---

[5] Not only does ineffective assistance of counsel establish "cause and prejudice" to overcome procedural default, in my experience, such claims are far and away the most common § 2255 claims, is a fact that the U.S. Attorney's office is well aware of.

The respondent argues that, as a matter of fact, Smart did not provide deficient performance because Smart told Olivares that he would be deported.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*,] 466 U.S. at 688, 104 S.Ct. 2052…. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*., at 687, 104 S.Ct. 2052.

*Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011). Also, the court "'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."'" *King*, 595 F.3d at 852–53 (quoting *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996), in turn quoting *Strickland*, 466 U.S. at 690).

There is no (real) dispute that the alleged conduct would be deficient performance. Thus, this argument essentially comes down to a credibility determination. Smart said he told Olivares that Olivares would be deported if he plead guilty. Olivares said that his attorney may have mentioned "consequences," but did not tell him that he would be deported. In this case, Smart is far more credible.

Olivares's testimony before Judge O'Brien is riddled with contradictions. First, and foremost, Olivares stated that he did not know that he would be deported until he arrived at a BOP facility in Texas. However, at every stage of the case, Judge O'Brien informed Olivares, through an interpreter, that he would be deported. At the change of plea hearing, Judge O'Brien told Olivares that he would likely be deported if he plead guilty, and then, at the sentencing, Judge O'Brien told Olivares the same thing again. Not only that, Judge O'Brien said he would put a request for Olivares to go to a nearby BOP facility in his judgment, but also told Olivares that he would likely go to a BOP facility in Texas because he was going to be deported. Olivares's statement that he did not know that he would be deported is completely contradicted by the record in this case

14

and Judge O'Brien's repeated warnings. Another contradiction concerns whether Smart used an interpreter to talk to Olivares. At the beginning of his testimony, Olivares said that Smart did not use an interpreter, the implication being that Smart somehow mistranslated the statement that Olivares would be deported. Later, Olivares said that he was talking to Smart through an interpreter, but Smart did not bring up the immigration issue.

Meanwhile, Smart's testimony is consistent. Smart stated that he told both Olivares and Olivares's sister that Olivares would be deported after pleading guilty. Smart talked about how his notes show that Olivares became very upset at the meeting where Smart told Olivares that he would be deported. Additionally, Smart based Olivares's variance motion on the fact that Olivares would be deported, which demonstrates that Smart appreciated the gravity of that collateral consequence.

Based on the foregoing, there simply is no way that I can find Smart provided deficient performance. As I stated above, both the Supreme Court and the Eighth Circuit Court of Appeals have instructed that counsel should be afforded a strong presumption that they performed diligently. In this case, Olivares sat through two hearings, with a court appointed interpreter, where both Judge O'Brien and Smart discussed, at length, the fact that Olivares would be deported. Olivares never questioned either Judge O'Brien or his counsel during those conversations. Smart testified consistently that he had informed Olivares that he would be deported if and when he plead guilty. Meanwhile, Olivares's claim that he did not know he would be deported until he arrived in Texas makes no sense. Accordingly, Olivares has failed to prove that Smart provided deficient performance.

    *c.*   *Cure*

Because Olivares has failed to show deficient performance, his claim of ineffective assistance has failed. However, I will briefly discuss the other two issues relevant to his claim. First, it is clear that, even if Smart failed to inform Olivares of his looming

15

deportation, Judge O'Brien cured any potential harm. In a recent case before Judge O'Brien, a § 2255 petitioner also argued that his counsel failed to inform him that he might be deported if he plead guilty. In that case, as in this case, Judge O'Brien warned the petitioner from the bench that he would be deported if he plead guilty. In denying the petitioner's claim, Judge O'Brien stated, "[i]n this case, the fact that [petitioner] had previously been deported after a criminal charge, and the fact that the Court twice warned him that he may be deported, clearly cures any prejudice." *Causor-Cerrato v. United States*, No. 10-CR-4041-DEO, 2015 WL 4932133, at *9 (N.D. Iowa 2015), citing *Abraham*, 699 F.3d at 1053. To wit, in the *Abraham* case, the Eighth Circuit Court of Appeals stated that a petitioner who had read a presentence report that indicated they would be deported, had an obligation to move to withdraw their guilty plea, even if counsel had failed to inform them of the immigration consequences. The court stated:

> [Petitioner, Abraham] does not dispute that he read the PSR, but rather argues that his attorney was ineffective for failing to advise him that the offense "virtually ensured" deportation. However, Abraham's revised PSR clearly indicated his offense rendered him deportable. Abraham accepted this PSR without objection, and his attorney confirmed at sentencing, with Abraham present and in open court, that he received the PSR and discussed it with Abraham. Abraham never moved to withdraw his guilty plea. Thus, there is no "reasonable probability that … the result of the proceeding would have been different" had Abraham's attorney advised him of the immigration consequences of pleading guilty.

*Abraham*, 699 F.3d at 1053. In this case, it is undisputed that Judge O'Brien told Olivares that he would be deported (numerous times). Thus, for the same reason as in *Abraham*, Olivares's claim cannot succeed, even if Smart failed to tell Olivares that he would be deported.

### d. *Prejudice*

Finally, the respondent argues that Olivares cannot show prejudice, which is the second prong of the *Strickland* analysis. *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (citing *Strickland*, 466 U.S. at 691–92, 104 S.Ct. 2052). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052). As the Supreme Court has explained,

> "*T*he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [Strickland, 466 U.S.] at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. That requires a "substantial," not just "conceivable," likelihood of a different result. Richter, 562 U.S., at ––––, 131 S.Ct., at 791.

*Pinholster*, 131 S. Ct. at 1403.

In this case, the respondent, bolstered by Smart's testimony, argues that if Olivares had refused to plead guilty, or withdrawn his plea, he would be in worse shape than he is right now. There is no doubt that the respondent is correct.

Olivares argues that, if he had known about the deportation, he would not have agreed to plead guilty or would have negotiated a plea deal that would have avoided the deportation risk. This argument is meritless. In this case, the AUSA was not willing to offer Olivares a plea deal in the first instance. There is no reason to believe that if Olivares had walked into to the AUSA's office making demands, he would have been offered not only a plea deal, but a plea deal that substantially departed from the charged conduct. As Smart stated in his affidavit:

> Because defendant confessed to distributing cocaine, there was virtually no chance we would be able to obtain a lesser

17

> charge. Also, defendant had a significant criminal history with a total of 9 criminal history points. His criminal history included multiple driving while intoxicated, several assaults, domestic violence, and reckless driving. Given defendant's criminal history and the fact that he confessed to possession with intent to distribute cocaine, there was no possibility of defense counsel negotiating a lesser charge for this defendant.

(Civ. docket no. 9-1) Moreover, as Smart testified, there was sufficient evidence to convict Olivares if he took his case to trial.[6] Not only was there video of the search and the discovery of the drugs, Olivares confessed in a post-*Miranda* interview. Had Olivares been convicted by a jury, he would still have been deported, the only difference would have been a longer prison sentence, and that ignores Smart's testimony that, had Olivares not plead, the prosecution would have filed a superseding indictment with additional charges. In short, the reason Olivares was deported was because of the criminal conduct he confessed to. There is no evidence in the record that he could have avoided a conviction for that criminal conduct.

To succeed in showing prejudice, Olivares must show that there is a reasonable probability the outcome would be different had counsel not performed the allegedly deficient act. In this case, there is no probability, much less a reasonable one, that the outcome would have been different. Assuming, *arguendo*, that Olivares did not know he was going to be deported, and that he would have refused to plead guilty if he had known, there is no indication that a different legal strategy would have avoided the conviction and the subsequent deportation. Accordingly, Olivares has failed to show that Smart was ineffective and his petition must be denied.

---

[6] Smart testified that Olivares's only real hope was to suppress the initial traffic stop and its fruits. Thus, when Olivares plead guilty, he retained the right to appeal Judge O'Brien's denial of his motion to suppress. Unfortunately for Olivares, the Eighth Circuit Court of Appeals denied his appeal. *Olivares-Rodriguez*, 415 F. App'x at 735.

### III. *CERTIFICATE OF APPEALABILITY*

Olivares must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller–El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller–El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I determine that Olivares does not present questions of substance for appellate review and, therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Accordingly, with respect to Olivares's claim, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Should Olivares wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedeman v. Benson*, 122 F.3d 518, 520–22 (8th Cir. 1997).

## IV. CONCLUSION

For the reasons discussed above, Olivares's Motion under 28 U.S.C. § 2255 is **denied in its entirety**. This case is **dismissed**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 13th day of October, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA